Smith *v.* Thomas & Harrison.

W. P. SMITH, Adm'r, *v.* THOMAS & HARRISON, Adm'rs.

1. The modern rule as to the mode of stating a trustee's account seems to be, to treat the income or accretions of the estate during the current year as unproductive; abating the same with legitimate charges, and allowing interest only on the excess.

Case cited: Thompson *v.* Childress, 1 Tenn. Chan. Rep., 369.

2. The mode, however, adopted by the master in this case was sanctioned by the court in the case of Jones *v.* Ward, 10 Yer., 146, and the decree of the chancellor is affirmed.

---

FROM WILLIAMSON.

---

· Appeal from the Chancery Court. W. S. FLEMING, Chancellor.

T. W. TURLEY for complainant.

G. W. HICKS for defendant.

MAYFIELD, Sp. J., delivered the opinion of the court.

The complainant prosecutes an appeal to this court from the action of the chancellor in overruling exceptions filed in his behalf to the report of the clerk and master.

Susannah Winstead was tenant for life to a large and valuable estate, consisting of lands, slaves, etc., and in 1853 she entered into an anti-nuptial contract with Jeremiah Stephenson, by which her estate was conveyed to Wm. Harrison, trustee, to be held and

27—VOL. 8.

managed in the main for her sole and separate use. The marriage took place, the trustee accepted and continued in the execution of his trusts during the lifetime of Mrs. Stephenson, and after her death, which took place in 1862, he qualified as her executor, and entered upon the discharge of the further trust duties imposed upon him; but in 1865 he also departed this life, and his representatives have been called to account for the manner of the execution of his trusts, the matter now pending being on the account to the complainant, as administratrix, with the will annexed, of Mrs. Stephenson, which was taken under the order of the court below, pronounced in pursuance of the decree rendered on former appeal to this court.

Annual settlements had been made between the parties during the life-time of Mrs. Stephenson, and these were not disturbed in taking the account.

In stating the account the master allowed as compensation to the executor and trustee $100 per annum, and he charged interest on receipts by the trustee from their respective dates up to the annual rests, and allowed interest on disbursements from time made up to the annual rests, and the complainant excepted to the compensation and to the mode of stating the account.

The third exception by complainant was not insisted upon on the hearing, and the fourth exception is assigned because the master should have charged, as against the trustee, interest at the rate of ten per cent. instead of six per cent.

The fifth exception was sustained by the chancellor,

and the sixth and last exception was because the master allowed respondent, administrator, seventy-five dollars as compensation for certain services rendered on behalf of the estate of Mrs. Stephenson.

The respondent filed certain exceptions, which, however, together with all the exceptions filed by complainant, save exception five, were disallowed and overruled, and the complainant alone appealed.

We are not satisfied that any injustice has been done complainant. The proof shows the estate to have been considerable, the number of slaves large—exceeding sixty in number—and we think the compensation allowed fully justified by the evidence. As to the mode of stating the account, the modern rule seems to be to treat the income or accretions of the estate during the current year as unproductive, abating the same with legitimate charges, and allowing interest only on the excess. Perry on Trusts, sec. 468; *Thompson* v. *Childress,* 1 Cooper's Chan. Rep., 369. However, the one adopted by the master in this case was sanctioned by this court in the case of *Jones* v. *Ward,* 10 Yer., 146, and we fail to see in what respect complainant has any right to complain. We are not disposed to increase the rate of interest allowed. While there is evidence in the record showing that the intestate, Harrison, was a man possessed of considerable means, and was accustomed before the war to negotiate loans at a high rate of interest, including, perhaps, trust funds in such loans, there is also evidence that from and after 1862, he had on hand during the war a large amount of funds which he was unable to

loan.   No abatement is allowed by the master on account of the war, and no notice that in one item of $350, as half of the hire of slave Bill, from January 1st, 1862, interest to January 1st, 1871, amounting to $313.50, is charged.   On the whole we think complainant should be satisfied.

Affirm the decree of the chancellor with costs.